UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATHANIEL V. MASSAQUOI II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-2014 (RBW) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Nathaniel V. Massaquoi II, filed this civil action against the defendant, the District of Columbia,[1] asserting violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (2012), and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to e-17 (2012). See Amended Complaint ("Compl.") ¶¶ 1(a)-(c).[2]  Currently before the Court is the defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Motion to Dismiss Amended Complaint ("Mot.") at 1.  After careful consideration of the parties' submissions,[3] the Court must grant in part and deny in part the defendant's motion for the reasons stated below.

---

[1] The plaintiff filed suit in this case against several defendants, but ultimately agreed to dismiss all conceivable defendants except the District of Columbia.  Opposition to Motion to Dismiss ("Opp'n") at 11.

[2] The plaintiff's complaint represents that this action arises under, among other federal statutes, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (2012), Compl. ¶ 4; see also id. ¶ A (mentioning the ADEA in passing when seeking relief for the defendant's alleged conduct), but none of the plaintiff's claims invoke this statute, see id. ¶¶ 44-77 (asserting claims only under Title VII of the Civil Rights Act and the ADA).

[3] In addition to the filings already mentioned, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of [the] Defendant's Motion to Dismiss Amended Complaint ("Mem."); and (2) the Reply to [the] Plaintiff's Opposition to [the] Defendant's Motion to Dismiss Amended Complaint ("Reply").

1

## I.  BACKGROUND

The plaintiff "is a professing Christian . . . male," Compl. ¶ 46, whose "national origin is the Republic of Liberia," and is "over the age of forty," id. ¶ 9.  According to the plaintiff, he "suffers from major anxiety."  Id.  In October 2007, the plaintiff was hired by the District of Columbia to work at its Child Support Services Division of the Office of the Attorney General ("Child Support Services Division") as a Community Outreach Specialist.  Id. ¶¶ 9, 11.  Since he was hired, the plaintiff has allegedly been subjected to disparate treatment by his immediate manager at the Child Support Services Division, Angelisa Young, an African-American, who "does not suffer from major depression."  Id. ¶ 14.  More specifically, Ms. Young allegedly "subject[ed] [the] [p]laintiff to disparate treatment based upon religion, national origin, gender[,] and disability."  Id. ¶ 19.  The consequences of this alleged disparate treatment include denial of a promotion opportunity in 2010, id. ¶ 16, as well as denial of medical leave pursuant to the Family Medical Leave Act in October 2011, see id. ¶¶ 17-18.

In February 2012, the plaintiff complained to Nicole Reece, the Acting Chief of Policy, Outreach and Training Section of the Child Support Services Division, that Ms. Young was subjecting the plaintiff to such disparate treatment, but allegedly no action was taken to address the plaintiff's grievances, except to inform Ms. Young of the complaint.  See id. ¶¶ 19-21.  In the following month, Ms. Reece allegedly moved the plaintiff "from a cubicle only steps away from her office . . . to a less desirable location" in the office.  Id. ¶ 22.  Thereafter, in April 2012, the plaintiff contends that "Ms. Young began to intensify her discriminatory and retaliatory treatment of [the] [p]laintiff."  Id. ¶ 24; see also id. (alleging that discriminatory and retaliatory treatment included "issuing letters of admonition, excluding [the] [p]laintiff from meetings, and denying [the] [p]laintiff's requests to participate in essential [Child Support Services Division]

2

training"); id. ¶ 28 (alleging that the plaintiff was excluded from attending a meeting that was a part of his job); id. ¶ 33 (alleging that the plaintiff was denied training opportunities).

The plaintiff identifies the following specific examples of this alleged discriminatory and retaliatory conduct. In April 2012, during a staff meeting

> Ms. Young asked each staff member to state one good thing that was going on [in] their personal life. When it was [the plaintiff's] turn, [he] stated: "God, God is good!" [Ms.] Young began to swag her finger in the air and stated: "Now, now . . . let's leave religion out of government!"

Id. ¶ 25. Then in May 2012, when the plaintiff sought to take medical leave pursuant to the Family and Medical Leave Act

> Ms. Young advised [the] [p]laintiff that she was going to have to take corrective action against him. . . . Ms. Young stated words [to] th[e] effect [of]: "I know that they are considering your request for FMLA, until they tell me something, I have to do what I have to do!!! I must take corrective action now."

Id. ¶ 26. In that same month, the plaintiff contends that "Ms. Young yelled at [the] [p]laintiff for purportedly sending too many work-related emails," and allegedly punished the plaintiff by "fail[ing] to approve one of [the] [p]laintiff's work products." Id. ¶ 27. Later that year, in August 2012, the "[p]laintiff filed an internal discrimination and retaliation complaint with [the Office of Attorney General]." Id. ¶ 30. Then, beginning in November 2012, Ms. Young allegedly started eliminating certain duties the plaintiff had been performing, which fell under his purview as a Community Outreach Specialist. See id. ¶¶ 32-33. The plaintiff was then "placed on administrative leave" in January 2013, "pending termination from employment . . . effective" March 2013. Id. ¶ 34. As a result of the above-described events, the plaintiff has allegedly suffered "irreparable loss and injury, including, but not limited to economic loss, humiliation, embarrassment, emotional distress[,] and deprivation of his right to equal employment opportunities." Id. ¶ 37; see also id. ¶¶ 38-43 (detailing the extent of the alleged injuries). The

plaintiff commenced this lawsuit, seeking damages for his alleged injuries.  See id. at 13-15.  The defendant has moved to dismiss the suit.  Mot. at 1.

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Moreover, a plaintiff receives the "benefit of all inferences that can be derived from the facts alleged."  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  However, raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth."  Id. at 679.

## III.     ANALYSIS

### A. Counts One and Three of the Plaintiff's Complaint

In counts one and three of his complaint, the plaintiff claims that the defendant has discriminated and retaliated against him, and subjected him to a hostile work environment in

violation of Title VII, because of his national origin, gender, and religion.[4]  Compl. ¶¶ 44-55, 66-77.  The defendant contends that the plaintiff has failed to plead a claim in either count one or count three of his complaint upon which relief may be granted.  Mot. at 1.

### 1. The Plaintiff's Title VII Disparate Treatment Discrimination Claim

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Although "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case [of discrimination] to survive a [Rule 12(b)(6)] motion to dismiss," Jones v. Air Line Pilots Ass'n, 642 F.3d 1100, 1104 (D.C. Cir. 2011), the plaintiff must nevertheless "plead sufficient facts to show a plausible entitlement to relief," Rodriguez v. Donovan, 922 F. Supp. 2d 11, 17 (D.D.C. 2013).  "[T]he two essential elements of a [Title VII] discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, [or] age . . . ." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Here, the plaintiff has not pleaded sufficient facts to demonstrate that he is entitled to an inference of discrimination based on disparate treatment.  Aside from conclusory allegations, the plaintiff offers nothing more to suggest that the alleged adverse employment actions he endured

---

[4] To the extent the plaintiff sought to bring a claim under Title VII on the basis of his alleged disability, see Compl. at 9 ("[d]iscrimination [b]ased [u]pon . . . [d]isability [u]nder Title VII"), such a claim is legally flawed, Sledge v. District of Columbia, _ F. Supp. 2d _, _, 2014 WL 3845798, at *10 (D.D.C. 2014) ("Title VII does not prohibit disability discrimination at all—that, of course, is the provenance of the ADA . . . ." (emphasis in original)); Jones v. The Wash. Times, 668 F. Supp. 2d 53, 59-60 (D.D.C. 2009) ("Title VII . . . [does not] prohibit[] discrimination based on a person's disability.").

while he was employed by the defendant were because of his national origin, gender, or religion.[5]  In other words, it is not reasonable to infer that just because Ms. Young or Ms. Reece were of a different national origin, gender, and religion than the plaintiff, all disciplinary actions they took against the plaintiff were motivated by these differences.  Such an inference is not reasonable here because the complaint is entirely void of any suggestion that the plaintiff was treated any differently than similarly situated employees who were not of the plaintiff's national origin, gender, or religion.  See Mapp v. District of Columbia, 993 F. Supp. 2d 22, 25 (D.D.C. 2013) ("The second element—that the adverse action was motivated by discriminatory intent—is most often proven by . . . suggesting that the employer treated other employees of a different . . . [national origin, gender, and religion] more favorably in the same factual circumstances." (certain ellipses and internal alteration and quotation marks omitted)); Budik v. Howard Univ. Hosp., 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (Walton, J.) (dismissing discrimination claim based on disparate treatment where Court could not infer discrimination because the plaintiff did not allege that similarly-situated employees of different race were treated differently).  Thus, the plaintiff's conclusory allegations of discrimination, without any supporting facts, "stop short of the line between possibility and plausibility of entitlement to relief."  Iqbal, 556 U.S. at 696.  Accordingly, the plaintiff's discrimination claim under Title VII will be dismissed.

### 2. The Plaintiff's Title VII Retaliation Claim

Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §

---

[5]  To be clear, the Court is not assessing at this time whether these actions are in fact adverse employment actions.

2000e-3(a). To plead unlawful retaliation, a plaintiff must allege sufficient facts from which it can be reasonably inferred (1) he engaged in protected activity opposing discrimination; (2) that he suffered a materially adverse employment action by his employer; and (3) that there was "a causal link between the protected activity and the adverse action." Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal citations omitted). Protected activity includes making an informal complaint of discrimination. Richardson v. Gutierrez, 477 F. Supp. 2d 22, 27 (D.D.C. 2007). As another member of this Court has explained:

> [T]here is a difference between "adverse actions" that support a claim for discrimination and "materially adverse actions" that support a claim for retaliation. Unlike discriminatory actions, retaliatory actions need not be employment-related or even occur in the workplace, nor must they result in "a materially adverse change in the terms or conditions of one's employment." Nonetheless, the alleged retaliatory action must produce "an injury or harm." The injury or harm must be "material," meaning that it could "dissuade a reasonable worker from making or supporting a charge of discrimination."

Nurriddin v. Bolden, _ F. Supp. 2d _, _, 2014 WL 1648517, at *6 (D.D.C. 2014) (internal alterations and citations omitted); see also Baloch, 550 F.3d at 1198 n.4 ("'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim.").

The plaintiff first engaged in protected activity opposing discrimination in February 2012, when he informally complained to Ms. Reece about Ms. Young's conduct. See Compl. ¶¶ 19-21. For the purposes of the Court's analysis of the plaintiff's Title VII retaliation claim then, any alleged materially adverse employment action that occurred before the plaintiff complained to Ms. Reese is irrelevant. Wilson v. Mabus, _ F. Supp. 2d _, _, 2014 WL 4229996, at *4 (D.D.C. 2014) ("The only employment actions that could plausibly be considered retaliation must have taken place after [the] plaintiff engaged in protected activity." (emphasis added)).

The alleged conduct that occurred after the plaintiff informally complained to Ms. Reece about Ms. Young's alleged discriminatory conduct in February 2012, Compl. ¶ 19, is sufficient at this early juncture of the case to support a retaliation claim. The alleged conduct, such as "fail[ing] to convert" the plaintiff from a "limited-term" employee to a "full-time" employee,[6] Compl. ¶ 16, relocating the plaintiff's office space, id. ¶ 22, issuing letters of admonition to the plaintiff, id. ¶ 24, excluding the plaintiff from meetings, id.; id. ¶ 28, denying the plaintiff's requests to participate in professional development opportunities, id. ¶ 24, and threatening to take "corrective action" against the plaintiff, id. ¶ 26, could be considered materially adverse employment actions because they have the potential to dissuade reasonable workers from making or supporting a charge of discrimination. See, e.g., Baloch, 550 F.3d at 1199 (suggesting that letters of admonition containing "abusive language" may be materially adverse); Gaujacq v. EDF, Inc., 601 F.3d 565, 578 (D.C. Cir. 2010) ("A threatening verbal statement, standing alone, might well constitute a materially adverse action."); Allen v. Napolitano, 774 F. Supp. 2d 186, 200 (D.D.C. 2011) (recognizing that exclusions from meetings can be materially adverse employment actions); Herbert v. Architect of Capitol, 766 F. Supp. 2d 59, 76 (D.D.C. 2011) (indicating that letters of admonition containing affirmative representations of future punishment may be materially adverse); Youssef v. FBI, 762 F. Supp. 2d 76, 82 (D.D.C. 2011) (noting that "denial of a training opportunity may constitute a materially adverse action" (emphasis in original)), aff'd in part, 687 F.3d 397 (D.C. Cir. 2012); Prince v. Rice, 453 F. Supp. 2d 14, 29 (D.D.C. 2006) ("It may be that, in some cases, relocation to a significantly less desirable work

---

[6] The defendant has misread the plaintiff's allegation concerning the alleged failure to be converted to a full-time employee. The failure to convert the plaintiff to a full-time employee occurred "during his employment," Compl. ¶ 16 (emphasis added), not just in September 2010, as the defendant suggests, see Mem. at 14 ("The first tangible actions listed in the [a]mended [c]omplaint are [the] [p]laintiff's failure to be promoted or have his position converted from [a "Not-to-Exceed"] position to [a Full-Time-Equivalent] position in September 2010.").

space might deter a reasonable employee from filing a complaint of discrimination (or otherwise engaging in protected activities)."); Powell v. Castaneda, 390 F. Supp. 2d 1, 9 n.8, 11 (D.D.C. 2005) (permitting retaliation claim based on allegations that the defendant "fail[ed] to convert the plaintiff's part time position into a full time position," where, as here, the plaintiff "did not state the dates of these refusals"), on reconsideration in part, 247 F.R.D. 179 (D.D.C. 2007).[7]

Likewise, the alleged actions that occurred after the plaintiff filed his internal complaint with the Office of Attorney General in August 2012, Compl. ¶ 30, can also qualify as materially adverse employment actions for several reasons. First, the defendant does not appear to dispute that the placement of the plaintiff on administrative leave in January 2013 and the termination of the plaintiff from the position of Community Outreach Specialist in March 2013, id. ¶ 34, are materially adverse actions, see Mem. at 14-15. And second, the plaintiff was purportedly "stripped" of certain "essential duties" from his position in November 2012,[8] Compl. ¶ 32, which can qualify as a materially adverse action for a retaliation claim, Edwards v. EPA, 456 F. Supp. 2d 72, 87 (D.D.C. 2006) ("[T]his Court has similarly concluded that a plaintiff's allegation that she had been stripped of some of her duties sufficed to establish an adverse employment action in the retaliation context."). Although the defendant harbors doubt as to whether these duties were in fact "essential," Mem. at 15, that doubt has no bearing on the merits of its motion. At this stage of the case, the plaintiff need only plead facts that permit the Court to reasonably infer

---

[7] The defendant mistakenly contends that the actions alleged by the plaintiff are not materially adverse actions, having confused the standard for a "materially adverse action" in the retaliation context with the more demanding standard for an "adverse action" in the discrimination context. See, e.g., Baloch, 550 F.3d at 1198 ("'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim."). In contending that what the plaintiff alleges are not materially adverse actions, the defendant cites Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001), as support for its position. See Mem. at 14-15. However, that case addressed adverse employment actions in the context of a discrimination claim, not a retaliation claim.

[8] According to the plaintiff, these "essential duties" were "relat[ed] to providing outreach services to all correctional facilities." Compl. ¶ 32.

that relieving an employee of duties could dissuade a reasonable worker from making or supporting a charge of discrimination, regardless of whether the duties were "essential."

Moreover, contrary to the defendant's position, Mem. at 15-16, the plaintiff has sufficiently pleaded a causal connection—albeit on the thinnest of margins—between the protected activity and the alleged discriminatory and retaliatory conduct. The plaintiff alleges that after he informally complained to Ms. Reece in February 2012 about Ms. Young's alleged mistreatment of him, a series of disciplinary actions were then instituted against him by the defendant. See Compl. ¶¶ 19, 22, 24-28, 73-74. Similarly, following the filing of the plaintiff's formal complaint with the Office of Attorney General in August 2012, the defendant allegedly took additional disciplinary actions against him. See id. ¶¶ 30, 32-34, 73-74. These allegations permit the Court to reasonably infer a plausible retaliation claim. See Bryant v. Pepco, 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (noting that the plaintiff need not plead temporal proximity to sustain retaliation claim).[9] Therefore, with respect to the plaintiff's retaliation claim, the defendant's motion will be denied.

### 3. The Plaintiff's Title VII Hostile Work Environment

To state a claim for hostile work environment, a plaintiff must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In evaluating a plaintiff's allegations, courts must consider "all the circumstances": "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

---

[9] The Court need not address whether the plaintiff has pleaded a plausible link of retaliatory conduct between his February 2012 informal complaint to Ms. Reece and his placement on administrative leave in January 2013 and his termination in March 2013, as the Court has already found that conduct unrelated to his placement on leave and termination can sustain a retaliation claim predicated on this informal complaint.

10

utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." (internal citation and quotation marks omitted)). "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment. Even a few isolated incidents of offensive conduct do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citations omitted).

The plaintiff's hostile work environment claim is essentially an amalgamation of his discrimination and retaliation claims, which "[c]ourts have been reluctant to transform . . . into a cause of action for hostile work environment." Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (citing Lester v. Natsios, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)); Franklin v. Potter, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) ("Because [the] plaintiff's allegedly 'hostile' events 'are the very employment actions he claims are retaliatory, he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.'" (internal alteration omitted) (quoting Keeley v. Small, 391 F. Supp. 2d 30, 51 (D.D.C. 2005)). Although incidents of discrimination or retaliation can establish a hostile work environment if connected to a pervasive pattern of severe harassment, the actions alleged by the plaintiff here do not rise to that level. See Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[The] [p]laintiff, in effect, seeks to transform his challenges to discrete acts of alleged discrimination or retaliation (e.g., nonpromotions, denial of leave, and termination) into a hostile work environment claim by

combining those events with a series of ordinary workplace difficulties. But mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment." (internal quotation marks omitted)); Franklin, 600 F. Supp. 2d at 77 ("Discrete acts constituting discrimination or retaliation claims are different in kind from a hostile work environment claim." (internal alteration, ellipses, and quotation marks omitted)).

The defendant's alleged discriminatory conduct does not permit the Court to infer that the defendant has engaged in a pervasive or severe pattern of harassment because the allegations do not suggest that the defendant's conduct has altered the conditions of the plaintiff's employment or that it has created an abusive working environment. For example, there is no allegation that the plaintiff was physically threatened or humiliated. The complaints made by the plaintiff comports with "ordinary tribulations in the workplace," id. at 76 (citing Faragher, 524 U.S. at 788), and are therefore insufficient as matter of law to establish that the defendant subjected him to a hostile work environment,[10] see, e.g., Casey v. Mabus, 878 F. Supp. 2d 175, 189-90 (D.D.C. 2012) (dismissing hostile work environment claim founded upon the plaintiff's "exclusion from the planning and presentation of training courses"); Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (dismissing hostile work environment claim where plaintiff alleged that he was yelled at, received unfavorable feedback, told he could not submit any more assignments, and placed in probationary status to improve job performance); Holmes-Martin v. Sebelius, 693 F. Supp. 2d 141, 164-67 (D.D.C. 2010) (finding no hostile work environment where a manager insinuated an employee was incompetent in front of others, excluded her from meetings,

---

[10] The plaintiff's contention that the actions of being "stripped of many of the duties of his position," being "suspended," and "eventually [being] terminated" are "alone . . . sufficient" to establish a hostile work environment claim is not accompanied by any case authority. Opp'n at 8-9. In fact, the case authority suggests otherwise, as the plaintiff has essentially attempted to aggregate alleged acts of discrimination and retaliation into a hostile work environment claim, which he is not permitted to do. See Nurriddin, 674 F. Supp. 2d at 94.

included unwarranted criticisms in a review, and imposed unrealistic deadlines); Houston v. SecTek, Inc., 680 F. Supp. 2d 215, 225 (D.D.C. 2010) ("Allegations of undesirable job assignments or modified job functions and of [a supervisor]'s unprofessional and offensive treatment are not sufficient to establish that [the plaintiff]'s work environment was permeated with discriminatory intimidation, ridicule, and insult." (internal quotation marks omitted)), aff'd, 407 F. App'x 490 (D.C. Cir. 2011); Nurriddin, 674 F. Supp. 2d at 94 ("Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context."); Pearsall v. Holder, 610 F. Supp. 2d 87, 98 n.10 (D.D.C. 2009) (dismissing claim where the plaintiff "argu[ed] that [the Department of Justice] created a hostile work environment by (1) assigning him substandard office space; (2) denying him training; (3) denying him the opportunity to telecommute on a temporary basis for medical reasons; (4) excluding him from certain meetings; and (5) generally underutilizing his skills and experience"). Moreover, the plaintiff boasts that he has "received excellent employment reviews throughout his tenure at the Child Support Service[s] Division." Compl. ¶ 13 (emphasis added). This acknowledgment further undermines his argument that the plaintiff was subjected to a hostile work environment. See Peters v. District of Columbia, 873 F. Supp. 2d 158, 194 (D.D.C. 2012) ("Positive feed-back and evaluations, as well as restoration to a full management position, are inconsistent with a claim that she was discriminated against in a hostile work environment."); Bell v. Gonzales, 398 F. Supp. 2d 78, 92-93 (D.D.C. 2005) ("Finally, with respect to whether the conduct reasonably interferes with the employee's performance, [the] plaintiff acknowledges that he received superior performance appraisals during this period and received an 'exceptional' rating in the critical area of technical ability. The ratings are a further indication that the level of alleged

harassment did not rise to that of a hostile work environment."). Accordingly, the plaintiff's Title VII hostile work environment claim will be dismissed.

### B. Count Two of the Plaintiff's Complaint

In count two of his complaint, the plaintiff asserts violations of the ADA. Compl. ¶¶ 56-65. The defendant seeks dismissal of this count on the basis that the plaintiff has not sufficiently pleaded that he is disabled under the ADA. Mem. at 8-9. The Court agrees that dismissal is required.

The ADA not only forbids discrimination against a "qualified individual on the basis of disability," 42 U.S.C. § 12112(a), but also retaliation against such an individual, id. § 12203. An individual is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment;" or has been "regarded as having such an impairment." Id. § 12102(1). Further,

> [a]n impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii). The ADA provides a nonexhaustive list of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

The plaintiff's complaint does not plausibly assert that he is disabled under the ADA because there is no allegation that his alleged "anxiety disorder" substantially limits a major life activity. Compl. ¶¶ 9, 42, 58. And, contrary to the plaintiff's position, see Opp'n at 6-7, having "failed to allege facts sufficient to support a claim that he is substantially limited in a major life

14

activity," his ADA claim cannot survive a motion to dismiss. Sheller-Paire v. Gray, 888 F. Supp. 2d 34, 42 (D.D.C. 2012); see also Scott v. Dist. Hosp. Partners, L.P., _ F. Supp. 2d _, _, 2014 WL 3702855, at *5 (D.D.C. 2014) (dismissing ADA claim where there was no allegation that the plaintiff had "a physical impairment that substantially limited a major life activity as compared to the general public" (emphasis in original) (citing 29 C.F.R. § 1630.2(j)(1)(ii))). Therefore, the Court will dismiss count two of the complaint.

### C. The Plaintiff's Request for Leave to Amend His Complaint

Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Contrary to the plaintiff's position, however, see Opp'n at 10-11, Rule 15(a) "applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to 'be freely given.'" Belizan v. Herson, 434 F.3d 579, 582 (D.C. Cir. 2006). In this Court, "a request for leave must be submitted in the form of a written motion," and it must be "accompanied by a statement of the specific points of law and authority that support the motion . . . [and a] proposed pleading as amended." Id. (internal citations omitted). Here, the plaintiff requested leave to amend his complaint only as an alternative argument to dismissal in his opposition. Opp'n at 11. This is an improper vehicle for bringing the plaintiff's request for leave to amend before the Court, and therefore, the Court need not address it further at this time. Belizan, 434 F.3d at 582 ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which [the] amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, only count three for retaliation under Title VII remains alive in the matter.[11]

**SO ORDERED** this 25th day of February, 2015.

REGGIE B. WALTON
United States District Judge

---

[11] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.