UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

NATHANIEL V. MASSAQUOI II,

    Plaintiff,

v().

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 13-2014 (RBW)

---

## MEMORANDUM OPINION

The plaintiff, Nathaniel Massaquoi, brings this civil action against the defendant, the District of Columbia (the "District"), his former employer, asserting claims of hostile work environment and discrimination on the basis of national origin, religion, and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e–17 (2012) ("Title VII"), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2012), and retaliation in violation of both statutes. See Amended Complaint ("Am. Compl.") ¶¶ 1–2. Currently before the Court is the Defendant's Motion for Summary Judgment ("Def.'s Mot."), which seeks summary judgment on the plaintiff's Title VII retaliation claim, see Def.'s Mot. at 1, which is the only claim that survived the District's motion to dismiss.[1] Upon careful consideration of the parties' submissions,[2] the

---

[1] At the motion to dismiss stage in this litigation, the Court dismissed the plaintiff's Title VII discrimination and hostile work environment claims, as well as the plaintiff's ADA claims. See Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 49–50, 52–55 (D.D.C. 2015) (Walton, J.). However, the Court concluded that the plaintiff had alleged in his Amended Complaint a plausible Title VII retaliation claim. See id. at 50–52.

[2] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) the defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."); (2) the defendant's Statement of Material Facts Not in Dispute Suppo[r]ting the District's Motion for Summary Judgment

(continued . . .)

Court concludes that it must grant in part and deny in part the District's motion.

## I.  BACKGROUND

Although much of the factual background of this case has been previously set forth by the Court, see Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 47–48 (D.D.C. 2015) (Walton, J.), the Court finds that reiteration of the following facts as alleged by the plaintiff, and not disputed by the District, is necessary for the resolution of the pending motion.

On October 1, 2007, the District hired the plaintiff to work at the Child Support Services Division of the District's Office of the Attorney General (the "Division") as a Community Outreach Specialist.  See Pl.'s Facts ¶ 1; see also Def.'s Facts ¶ 1.  The plaintiff's primary duties included "communicating with stakeholders[,] such [as] inmates, [ ] returning citizens [from incarceration] or members of the community, clergy, families[,] and even judges."  Pl.'s Facts ¶ 2; see also Def.'s Facts ¶¶ 2–3.  The plaintiff also performed a number of other responsibilities and participated in various other initiatives and programs.  See Pl.'s Facts ¶ 2.

From February 2012 through April 2012, the plaintiff reported to Nicole Reece.  Def.'s Facts. ¶ 4; see also Pl.'s Facts ¶ 3.  "On February 24, 2012, [the p]laintiff [informally] complained to [ ] Reese that [Angelisa] Young was subjecting him to disparate treatment."  Pl.'s Facts ¶ 6.  At that time, Ms. Young was also a Community Outreach Specialist; she was later promoted to be the plaintiff's supervisor in April 2012.  Id. ¶ 3.  In March 2012, the plaintiff's workstation was relocated.  See id. ¶ 7; see also Def.'s Facts ¶ 11.  And, between April 2012 and July 2012, the plaintiff received "letters of admonition, [was] exclud[ed] [ ] from meetings, and

---

(. . . continued)
("Def.'s Facts"); (3) the Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Statement of Facts & Material Facts in Dispute Supporting Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Facts"); and (5) the defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply").

[was] den[ied] . . . participat[ion] in essential [Division] training." Pl.'s Facts ¶ 8; see also Def.'s Facts ¶¶ 14–18.

"In August 2012, [the p]laintiff's physician ordered [him] to take a medical leave of absence due to his deteriorating health condition . . . ." Pl.'s Facts ¶ 11. Then, "[the p]laintiff filed an internal retaliation complaint with the Equal Employment Opportunity Commission ('EEOC') at [the Office of the Attorney General]." Id.; see also Def.'s Facts ¶ 25. "After filing the EEOC [c]omplaint, [the p]laintiff remained on unpaid medical leave of absence . . . until October 31, 2012, when he returned to work . . . ." Pl.'s Facts ¶ 11. In November 2012, Young informed the plaintiff that he could no longer perform certain duties and denied the plaintiff certain training opportunities. See Pl.'s Facts ¶ 12. On January 4, 2013, the plaintiff was placed on paid administrative leave until the expiration of his contract of employment in March 2013, see Pl.'s Facts ¶ 12; see also Def.'s Facts ¶ 24, which the District elected not to renew, see Def.'s Facts ¶ 23; see also Pl.'s Facts ¶¶ 13–14.

Based on the employment actions taken by the District, the plaintiff commenced this litigation alleging that the District unlawfully retaliated against him for engaging in protected activity. See generally Am. Compl. The District now moves for summary judgment, arguing that it is entitled to judgment as a matter of law because the challenged employment actions were taken for legitimate, non-retaliatory reasons. See Def.'s Mot. at 2.

## II.   STANDARD OF REVIEW

Courts will grant a motion for summary judgment under the Federal Rules of Civil Procedure "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to

the non-moving party. Holcomb v. Powell, 433 F.3d 899, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] [ ] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-moving party]." Id. at 252.

### III. ANALYSIS

Title VII protects government employees from retaliation on the basis of having "opposed any practice made an unlawful employment practice by [Title VII], or . . . [having] made a charge . . . under [Title VII]." 42 U.S.C. § 2000e–3(a). "Where, as here, a plaintiff offers only circumstantial evidence of retaliation, h[is] claim is governed by the burden-shifting framework of McDonnell Douglas Corp v. Green, 411 U.S. 792, 802–[]08 (1973)." Solomon v. Vilsack, 763 F.3d 1, 14 (D.C. Cir. 2014); see also Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009). "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Jones,

557 F.3d at 677 (citing Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007)). If the plaintiff satisfies this burden, "the burden of production shifts to the employer to produce a 'legitimate, [non-retaliatory] reason' for its action." Solomon, 763 F.3d at 14 (quoting Wiley, 511 F.3d at 155). If the employer provides such a reason, the plaintiff must then counter with "sufficient evidence to 'create[] a genuine dispute on the ultimate issue of retaliation either directly by [showing] that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Id. (first and second alterations in original) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)).

However, once the employer "has asserted a legitimate, non-[retaliatory] reason" for the adverse employment actions in the context of a summary judgment motion, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008); see also Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (explaining that Brady's instruction that the district court should not examine whether a plaintiff made out a prima facie case where an employer has asserted a legitimate, non-discriminatory reason "appl[ies] equally to retaliation claims"). Rather, the court must evaluate only whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason [for the adverse employment actions] and that the employer intentionally [retaliated] against the employee." Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (quoting Brady, 520 F.3d at 494). In making this determination, the court considers "all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of

5

retaliation." Jones, 557 F.3d at 677 (citation and internal quotation marks omitted); see also id. at 679 ("[T]he court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." (quoting Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002))).

Here, the plaintiff asserts that, because he engaged in protected activity for the purpose of opposing discrimination, the District retaliated against him by: (1) relocating his cubicle to a less desirable location notwithstanding his medical condition, Pl.'s Facts ¶ 7; (2) excluding him from meetings and denying his request to participation in certain Division trainings, see id. ¶¶ 8, 10; (3) taking corrective action against him while he had a pending Family Medical Leave Act ("FMLA") request and "yell[ing] at [him] for purportedly sending too many work related [ ] emails," id. ¶ 9; (4) denying his reasonable accommodation requests "for a flexible start time, telecommuting as necessary[,] and a flexible outreach schedule," id. ¶ 4; (5) denying his request "to convert his employment status from term employment . . . to [f]ull-time [e]mployment," id.; (6) issuing him an admonishing letter on August 1, 2012, regarding his work performance, see id. ¶ 13; see also Pl.'s Opp'n at 14; (7) "strip[ing]" him of credentials and essential job-related duties, see Pl.'s Facts ¶ 12; and (8) placing him on paid administrative leave until the expiration of his contract and deciding not to renew his employment, see id. ¶ 12.[3] In response, the District argues that these actions cannot be considered retaliatory because none of the plaintiff's

---

[3] The plaintiff also asserts that the District retaliated against him by (1) denying his reasonable accommodation request in May 2009, see Pl.'s Facts ¶ 4; (2) denying him a career service position in September 2010, see id.; and (3) delaying a decision on three FMLA leave requests between October 11, 2011, and December 2011, see id. ¶ 5. However, because the plaintiff contends that he first engaged in protected activity in February 2012 when he informally complained to his supervisor about Young's allegedly discriminatory treatment, see id. ¶ 6, and because "[t]he only employment actions that could plausibly be considered retaliation must have taken place after [the] plaintiff engaged in [that] protected activity," Wilson v. Mabus, 65 F. Supp. 3d 127, 133 (D.D.C. 2014), these allegations of retaliatory conduct cannot form the basis of the plaintiff's retaliation claim.

6

supervisors were aware of the plaintiff's protected activities. See Def.'s Mem. at 9–10, 14. Additionally, the District asserts that it had various legitimate, non-retaliatory reasons for each of these allegedly adverse employment actions. See id. at 11–15. Therefore, the Court need only determine whether the plaintiff produced sufficient evidence from which a reasonable jury could conclude that the reasons offered by the District for its actions are pretext for what was actually unlawful retaliation, see Brady, 520 F.3d at 494; see also Jones, 557 F.3d at 678. The Court must therefore now address the plaintiff's proffer of circumstantial evidence (1) that his supervisors retaliated against him because they were aware of his engagement in protected activity and (2) that the District's asserted legitimate, non-retaliatory reasons for each of the alleged adverse employment actions are pretextual.

**A. The Supervisors' Knowledge of the Plaintiff's Protected Activity**

The District contends that "no decision-maker had any knowledge of the [plaintiff's] informal complaint when they took the actions that [the p]laintiff contends were retaliatory." Def.'s Mem. at 9.[4] Specifically, the District states:

> As of April 2012, [the p]laintiff's supervisors were Young and [Joseph] Allen[, the Division's Deputy and Assistant Director]. Allen, the primary decision maker, did not learn about any protected activity by [the p]laintiff until December 26, 2012, when he received an e-mail . . . about the [plaintiff's] August 2012 formal EEO[C] complaint. And Young first learned that [the p]laintiff had filed the formal EEO[C] complaint after [the p]laintiff left the agency in 2013.

Id. at 10 (internal citations omitted). Moreover, the District asserts that the "[p]laintiff's supervisors had no knowledge of [the plaintiff's] formal EEO[C] complaint when his outreach

---

[4] The District maintains that Reece "never talked to [the plaintiff] about a discrimination issue," see Def.'s Mem. at 10 (citing Def.'s Mot., Exhibit ("Ex.") 2 (Deposition of Nicole Reece ("Reece Dep.")) 22:1–2), nor did she speak with anyone in the Office of the Attorney General about the plaintiff in 2010, see id. (citation omitted). The Court construes this argument as the District indirectly contending that the plaintiff never made an informal complaint of discrimination to Reece against Young, and therefore, a challenge to the veracity of whether the plaintiff actually made an informal complaint. Given that this dispute involves a determination of which party is more credible, it appears that there is a genuine issue of material fact, which is proper for a jury to decide.

7

functions related to correctional facilities were reassigned." Id. at 14. Thus, according to the District, the adverse employment actions could not have been the product of retaliatory animus. See id. at 10, 14. The plaintiff responds that the temporal proximity between when he engaged in protected activity and the District's adverse employment actions demonstrates "that his supervisors were aware of his protected activity before taking adverse employment actions against him," Pl.'s Opp'n at 11; see id. at 11–12.

"To survive summary judgment [ ] [the plaintiff] needn't provide direct evidence that his supervisors knew of his protective activity; he need only offer circumstantial evidence that could reasonably support an inference that they did." Jones, 557 F.3d at 679. As this Circuit has explained,

> [t]here are multiple ways in which circumstantial evidence may support an inference that an employer's stated reason for a challenged employment action was not the actual reason, and that the real reason was prohibited . . . retaliation. The temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation.

Allen v. Johnson, 795 F.3d 34, 40 (D.C. Cir. 2015). "While courts have not definitively 'established the maximum time lapse between protected Title VII activity and alleged retaliatory actions,' action which occurs more than three months after the protected activity is not likely to qualify for such a causal inference." Williams v. Spencer, 883 F. Supp. 2d 165, 178 (D.D.C. 2012) (quoting Brodetski v. Duffey, 141 F. Supp. 2d 35, 43 (D.D.C. 2001)); see also Hamilton v. Geithner, 666 F.3d 1344, 1358–59 (D.C. Cir. 2012) (reversing the district court's grant of summary judgment on the plaintiff's retaliation claim in part because the challenged adverse employment action occurred within three months of the plaintiff engaging in statutorily protected activity).

Here, the plaintiff's circumstantial evidence of temporal proximity is sufficient to

"support an inference of mere knowledge" and ultimately, an "inference of actual retaliatory motive." Jones, 557 F.3d at 679 (holding that "evidence sufficient to support a prima facie case . . . applies to the ultimate inquiry [of retaliation vel non] as well," because that evidence "tends to support a circumstantial inference of retaliation"). The plaintiff first engaged in protected Title VII activity in February 2012, when he informally complained of discrimination against him by Young to Reece, who was his supervisor at that time. See Pl.'s Facts ¶¶ 3, 6. Approximately one month later, and while he was still under Reece's supervision, the plaintiff's work station cubicle was relocated to an allegedly undesirable location. See Pl.'s Facts ¶ 7; see also Pl.'s Opp'n at 14 (noting that the new workstation "was much smaller and in a noisy area" and "made [the p]laintiff feel claustrophobic"). Two months after the plaintiff initiated his informal complaint of discrimination against Young, she became the plaintiff's immediate supervisor. See Pl.'s Facts ¶ 8; see also Def.'s Facts ¶ 7. The plaintiff, who contends he suffered from anxiety, "submitted[] to [ ] Young . . . an accommodation request to move to a more conducible workstation but that request was denied." Pl.'s Facts ¶ 7.[5] Between April 2012 and July 2012, Young allegedly "issu[ed] letters of admonition, exclud[ed the p]laintiff from meetings, and den[ied his] request to participate in essential [Division] training," id. ¶ 8, took corrective action against the plaintiff, and "yelled at [him] for purportedly sending too many

---

[5] The District asserts that this alleged retaliatory action is "irrelevant to whether [it] is entitled to summary judgment" because "the Court has already dismissed [the plaintiff's] ADA claim." Def.'s Reply at 2. However, it appears to the Court that the plaintiff asserted this adverse action not only as support for his retaliation claim under the ADA, but also as part of the retaliatory conduct he purportedly suffered for engaging in protected activity under Title VII. See Am. Compl. ¶ 74. In any event, although the plaintiff does not have a viable retaliation claim under the ADA, he may employ the evidence supporting that dismissed claim as background evidence in support of the viability of his retaliation claim under Title VII. See Ross v. U.S. Capitol Police, 195 F. Supp. 3d 180, 196 (D.D.C. 2016) ("[C]ourts have concluded that the fact that a discrete act of alleged [retaliation] is not justiciable does not render that act irrelevant (as an evidentiary matter) with respect to prosecution of other, timely claims. To the contrary, evidence and allegations with respect to untimely acts of . . . retaliation may well be considered 'as background evidence in support of a timely claim' about another alleged occurrence." (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))).

work related [ ] emails," id. ¶ 9.

Although the plaintiff was "on unpaid medical leave of absence under the FMLA" from August 2012 until October 30, 2012, id. ¶ 11, he further engaged in protected activity when he filed an internal EEOC complaint in August 2012, see id. On October 31, 2012, the plaintiff "returned to work," id., and on the following day, on November 1, 2012, he contends that "Young stripped [him] of the essential duties of his position relating to outreach service to all correctional facilities and required him to surrender the access credential issued to him," id. ¶ 12. Consequently, given that the purported adverse actions were taken by the plaintiff's immediate supervisors and that the adverse employment actions were made on the heels of the plaintiff's pursuit of statutorily protected activity, this "circumstantial evidence [of temporal proximity] could reasonably support an inference" of knowledge of that activity. Jones, 557 F.3d at 679.

However, this Circuit has "also held . . . that the fact that employer adverse action follows closely after an employee's protected assertion of rights is not, by itself, always enough to survive summary judgment." Allen, 795 F.3d at 47. Rather, "[o]nce an employer has put forth legitimate, non-retaliatory reasons for [the] challenged action[s], 'positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine.'" Id. (quoting Hamilton, 666 F.3d at 1359); see also Woodruff v. Peters, 482 F.3d 521, 530 (D.C. Cir. 2007) ("If temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim."). Given this guidance from the Circuit, the Court proceeds to the plaintiff's proffer of evidence that, according to him, demonstrates that the District's proffer of legitimate, non-retaliatory reasons for its actions is pretext for retaliation.

### B. Evidence of Pretext Regarding the District's Assertions of Legitimate, Non-Retaliatory Reasons for Each Challenged Adverse Employment Action

#### 1. Relocating the Plaintiff's Workstation

The District asserts that the plaintiff's workstation was relocated "as part of a Division-wide realignment [ ] [with the p]laintiff [being] assigned to an area located near his unit." Def.'s Mem. at 11; see id. at 12 (noting that the "[p]laintiff acknowledges [that] everyone on the team was affected by the realignment" (citation omitted)). The plaintiff contends that this asserted legitimate, non-retaliatory reason for relocating his cubicle to an allegedly undesirable location is pretexual because he was relocated at Young's request, see Pl.'s Facts ¶ 7; see also Pl.'s Opp'n at 13–14; id., Ex. A (Deposition of Nathaniel Massaquoi ("Massaquoi Dep.")) at 62:5–8 (noting "that [ ] Young had ordered [him] to transfer [workstations]" even though "[s]he was not [ ] officially [his] supervisor yet"). The plaintiff also claims that the District's asserted reason for the relocation of his workstation is pretext for masking retaliation because his supervisors denied his "accommodation request [after the relocation] to move to a more conducible workstation." Pl.'s Facts ¶ 7; see also Pl.'s Opp'n at 14; id., Ex. A (Massaquoi Dep.) at 63:15–17 (noting that his accommodation request was made to both Young and her immediate supervisor, Allen).

The Court finds that the plaintiff has "produced sufficient evidence[—albeit minimal—]for a reasonable jury to find that the [District's] asserted non-retaliatory reason was not the actual reason" for relocating the plaintiff's workstation. Hernandez v. Pritzker, 741 F.3d 129, 133 (D.C. Cir. 2013) (quoting McGrath v. Clinton, 666 F.3d 1377, 1383 (D.C. Cir. 2012)). As an initial matter, the Court notes that the plaintiff has not submitted any evidence that suggests that his workstation was relocated at Young's request. However, the timing of the relocation of the plaintiff's workstation, when considered in conjunction with the timing of the

implementation of the Division-wide realignment, "could lead a reasonable jury to doubt the [District's] explanation." Hamilton, 666 F.3d at 1356 (emphasis removed). The plaintiff was relocated to a new workstation in March 2012. Compare Pl.'s Facts ¶ 7 (noting that the relocation occurred in March 2012), and Pl.'s Opp'n, Ex. A (Massaquoi Dep.) at 62:5–8 (stating that his workstation was relocated prior to Young becoming his supervisor in April 2012), with Def.'s Mem. at 11 (not disputing the plaintiff's assertion that his workstation was relocated in March 2012), and Def.'s Reply at 4 (same). But, the Division-wide realignment did not occur until April 2012, one month after the plaintiff alleges his workstation was relocated. See Def.'s Facts ¶ 8; Def.'s Mot., Ex. 4 (Letter from Nadine Chandler Wilson, Chief Counsel , Personnel Labor & Employment Div., Office of the Att'y Gen. for D.C., to Steven J. Anderson, President, AFGE Local 1403, and Sabrina Brown, President, AFSCME, District Council 20, Local 2401) (March 20, 2012) ("Restructuring Memo")) at 1, 3 (announcing the "upcoming" restructuring of the Division and providing that "[m]anagement has not yet set a date for the implementation of the restructure and welcomes [ ] comments by April 2, 2012"). Further, although the plaintiff acknowledges that other employees were also affected by the Division-wide realignment as noted by the District, see Def.'s Mem. at 12; see also Def.'s Reply at 4, the record is devoid of any evidence indicating that any other employee affected by the realignment also had their workstation relocated.[6]

Moreover, the denial of the plaintiff's accommodation request without any explanation for the rationale underlying the denial further undermines the District's retort that the plaintiff

---

[6] Contrary to the District's reliance on the plaintiff's purported acknowledgement of other personnel being affected by the realignment, see Def.'s Mem. at 12, the Court does not find that the plaintiff's deposition testimony suggests that others were likewise relocated to a different workstation. Rather, the Court interprets that portion of the plaintiff's testimony as his affirmation that others on his team were affected in regards to their job titles and duties. See Def.'s Mot., Ex. A (Massaquoi Dep.) at 60:11–15 (discussing the realignment and the effect that the realignment had on members of his team and their job-related responsibilities).

was relocated so he could be "near his unit." Def.'s Mem. at 11. The plaintiff's accommodation request petitioned his supervisors to be relocated to "a more conducible workstation." Pl.'s Facts ¶ 7. And the District has not explained why the plaintiff could not have been again relocated to a more favorable workstation within the area near his unit. Consequently, the timing of the plaintiff's workspace relocation, coupled with the denial of his accommodation request by his supervisors, one being the individual he informally complained was the source of the discrimination he experienced, "could lead a reasonable jury to disbelieve the [District] and to reach a verdict in [the plaintiff's] favor." Hamilton, 666 F.3d at 1357.

### 2. Excluding the Plaintiff from Meetings

In response to the plaintiff's assertion that he was excluded from meetings as retaliation for engaging in protected activity, the District contends that the plaintiff was not invited to certain meetings because those meetings "did not pertain to [the plaintiff] or his responsibilities." Def.'s Mem. at 12; see also id. ("Any meetings Young had with individual members of her staff occurred because she needed to discuss work handled by those individual staff members; Young invited [the p]laintiff to all meetings that concerned his assigned responsibilities or the unit as a whole."); Def.'s Reply at 5 (noting that the July 2012 meeting identified by the plaintiff "did not relate to [the plaintiff's] responsibilities," as the meeting concerned "the D.C. [j]ail initiative and outreach," which had been transferred to a unit other than the plaintiff's unit as part of the Division-wide realignment). As proof that the District's explanation is pretext designed to mask what was actually retaliation, the plaintiff argues that he was "excluded [ ]from attending a meeting with case managers at the D.C. jail" in July 2012, and that a "co-worker . . . advised [him] that she had attended the July 2012 meeting . . . and . . . felt . . . that she was being groomed to take [his] job." Pl.'s Facts ¶ 10.

13

As to this claim, the plaintiff "has failed to rebut [the District's] proffered legitimate, non-retaliatory reason[] for not inviting [him] to certain meetings." Allen, 795 F.3d at 46. The Court so concludes because, although the plaintiff has identified one meeting that he was excluded from attending, he has not presented any evidence of "how [his] alleged exclusion . . . had any adverse impact on [his] employment terms or conditions or caused any objectively tangible harm." Hayslett v. Perry, 332 F. Supp. 2d 93, 105 (D.D.C. 2004), cf. Allen v. Napolitano, 774 F. Supp. 2d 186, 200 (D.D.C. 2011) (denying summary judgment where the plaintiff provided evidence sufficient for "a reasonable juror [to] find that her exclusion from [ ] meetings affected the terms and conditions of her employment so as to be materially adverse and to have dissuaded a reasonable worker form making or supporting a charge of discrimination"). More importantly, the plaintiff has failed to offer any proof that the identified July 2012 meeting concerned his job-related duties at that time. See Pl.'s Opp'n at 14 (failing to contest the District's contention that his presence was not required at the meeting because the meeting concerned responsibilities that had been transferred to another unit as a part of the Division-wide realignment). Rather, the plaintiff offers "bald assertions" concerning his exclusion from certain meetings, and "[s]uch unsupported assertions are insufficient evidence of a material change in working conditions" to qualify as an adverse action. Hayslett, 332 F. Supp. 2d at 105 (quoting Gu v. Bos. Police Dep't, 312 F.3d 6, 15 (1st Cir. 2002)). Accordingly, the Court finds that the plaintiff has not presented sufficient evidence either to create a genuine dispute of material fact regarding the District's proffered reason for excluding him from certain meetings, or for a reasonable jury to find that he was excluded from certain meetings for retaliatory reasons. Cf. Thomas v. Vilsack, 718 F. Supp. 2d 106, 124 (D.D.C. 2010) (denying summary judgment in part because the plaintiff introduced evidence "show[ing that] she was excluded from important

communications . . . in which she . . . should have been included).[7]

### 3. Issuance of the August 1, 2012 Letter of Admonition

Regarding the plaintiff's assertion that he was issued letters of admonition, see Pl.'s Opp'n at 14; see also Pl.'s Facts ¶ 8, the District asserts that "the [p]laintiff was issued a letter of admonition on August 1, 2012" (the "Letter"), because "a routine customer service audit revealed that [the p]laintiff had not sent outreach customer letters, which were overdue according to the Division's customer service policy." Def.'s Mem. at 13–14. The District also contends that the Letter "did not result in any discipline and was not included in [the p]laintiff's personnel file," and therefore, the Letter "produced no injury or harm to [the p]laintiff and cannot be considered materially adverse." Id. at 13. The plaintiff argues that the District's explanation is pretext for retaliation, because "at th[at] time[,] there was not a strict time policy to respond to Mayoral Responses, [and] if there was, that was not adequately communicated to [him] . . . when he took over the duties" he had at that time. Pl.'s Opp'n at 14.

This Circuit has held that "[a] reprimand letter setting forth allegations of deficient work performance is not a materially adverse action absent a showing that the letter would have dissuaded a reasonable employee from engaging in protected activity." Durant v. D.C. Gov't, 875 F.3d 685, 698 (D.C. Cir. 2017). And a reprimand letter that "contain[s] no abusive language, but rather job-related constructive criticism[ that] can prompt an employee to improve [his] performance does not constitute an adverse action. Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (citation and internal quotation marks omitted); see also Grosdidier v.

---

[7] The District also argues that the plaintiff's allegations regarding comments his co-worker made to him about attending the July 2012 meeting at the D.C. jail "should be disregarded . . . [as] speculations based on hearsay." Def.'s Reply at 4. Although the Court has some concerns as to whether the comments allegedly made by the plaintiff's co-worker would be admissible evidence falling under an exception to the rule against the admissibility of hearsay evidence, the Court need not make that determination because, as it has concluded, the plaintiff has not produced evidence sufficient to rebut the District's assertion that he was not invited to this meeting given that the meeting did not relate to his job-related responsibilities.

Chairman, Broad. Bd. of Governors, 774 F. Supp. 2d 76, 113 (D.D.C. 2011) ("[L]etters of admonition or reprimand generally do not qualify as materially adverse actions when they do not contain offensive language and there is no evidence that the letter will result in any adverse consequences to the admonished employee.").

As to this action taken by the District, the Court finds that a reasonable jury could not conclude that the Letter constituted a materially adverse action, let alone one that was taken with retaliatory motives. The plaintiff does not dispute that he did not timely respond to the outstanding inquiries, see Pl.'s Opp'n at 14; instead, he argues that either "a strict time policy to respond" did not exist at that time, or that it was not properly conveyed to him, id. However, the record indicates that the plaintiff received a copy of the time policy well in advance of his alleged failure to timely respond to the inquiries, see Def.'s Mot., Ex. 8 (Letter) at 2 (noting that the plaintiff was given a copy of the time policy on May 18, 2012), and as the District correctly notes, see Def.'s Reply at 5, the plaintiff's purported unawareness of the time policy is not sufficient to demonstrate that the District's explanation is pretext for retaliation, see Allen, 795 F.3d at 39–40 (noting that the plaintiff's evidence must "raise an inference that an employer's stated reason . . . was not the actual reason, and that the real reason was prohibited . . . retaliation").[8]

Moreover, the plaintiff "has not alleged that the [Letter] contained abusive language," Bonnette v. Shinseki, 907 F. Supp. 2d 54, 71 (D.D.C. 2012), and has failed to show that, as a result of the Letter, he "experienced materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a

---

[8] The plaintiff also argues that responding to these types of inquiries "was not a formal part of [his] job description." Pl.'s Opp'n at 14. But, the Court is baffled as to how this is evidence of pretext, particularly when the plaintiff admits that "he volunteered to take on that responsibility." Id.

reasonable trier of fact could find objectively tangible harm," Saunders v. Mills, 172 F. Supp. 3d 74, 99 (D.D.C. 2016) (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). The Letter neither resulted in any disciplinary action nor "served as the basis for more severe disciplinary action." Herbert v. Architect of Capitol, 766 F. Supp. 2d 59, 75 (D.D.C. 2011). Furthermore, even though the Letter was to be retained by the District "for a period of not more than three [ ] years," Def.'s Mot., Ex. 8 (Letter) at 2, "it is undisputed that [the Letter] has in fact been expunged from the [District's] records." Herbert, 766 F. Supp. 2d at 75; see also Def.'s Mot., Ex. 9 (Letter from Benedia Rice, Director and Deputy Att'y Gen., Child Support Servs. Div., to Nathaniel Massaquoi) (January 8, 2013) (noting that the Letter was "withdrawn" and would "not be reflected in [the plaintiff's] OAG official personnel file"). Accordingly, the Court finds that on this record, no reasonable juror could conclude that the issuance of the Letter was materially adverse or that the District's explanation for issuing the Letter is pretext for retaliation.

### 4. Placing the Plaintiff on Paid Leave and Deciding Not to Renew the Plaintiff's Employment Contract

The District asserts that the plaintiff was placed on paid leave on January 4, 2013, until his existing term of employment expired in March 2013, at which time it decided not to renew or extend his employment because the Chief Counsel of the Office of the Attorney General had received a report from Kim McDaniel, the Director of Equal Employment Opportunity and Training, indicating "that [the p]laintiff had made insensitive comments in the workplace regarding members of the Gay, Lesbian, Bisexual and Transgender (GLBT) community and exhibited a bias towards others based on their sexual orientation." Def.'s Mem. at 15 (citing Def.'s Mot., Ex. 10 (Declaration of Nadine C. Wilburn) ¶ 3); see also Def.'s Facts ¶ 20 (noting "that [the p]laintiff had indicated a gay man needed to get the 'Devil out of him' so he could 'get

17

on God's path'"). Given its

> diverse employees, including members of the GLBT community, and [that the p]laintiff's position required him to interact directly with and serve public clients, some of whom are members of the GLBT community, the District [ ] concluded it was not in the office's best interest to extend [the p]laintiff's term or have him continuing to represent [it] in the community.

Def.'s Mem at 15 (citation and internal quotation marks omitted). In response, the plaintiff contends that he "never made those comments," and that "[t]he comments in th[e] report are false and were taken out of context." Pl.'s Opp'n at 15; see also id. (asserting that during his five-year tenure with the District, "there ha[ve] never be[en] any reports of [him] making offensive comments towards [the] GLBT community").

The plaintiff has failed to produce evidence sufficient to satisfy his burden of demonstrating that the District's proffered reason for placing him on paid leave and deciding not to extend his employment contract is pretextual. In this Circuit, "[o]nce the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation and internal quotation marks omitted) (second omission and second and third alterations in original); see also Edwards v. EPA, 456 F. Supp. 2d 72, 91 (D.D.C. 2006) ("[I]t is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with [retaliatory] animus." (second alteration in original) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001))). The plaintiff's unsupported representations that he did not make the allegedly insensitive comments referenced in the report or that his comments were taken out of context fail to show that the District acted with retaliatory animus. And although the plaintiff asserts that the purportedly false comments

18

were "all a part of [ ] Young's retaliatory conduct," Pl.'s Opp'n at 15, the plaintiff does not offer any proof as to how they were a part of such alleged conduct. To the contrary, the record is devoid of any evidence suggesting that Young had any involvement in drafting or submitting the report to the Chief Counsel or played any role in the underlying investigation conducted by Kim McDaniel. On this record, a reasonable jury could not find that the District's explanation for placing the plaintiff on paid leave until the expiration of his employment contract and declining to extend his employment was pretext for retaliation.[9]

### 5. Other Allegations of Retaliatory Conduct

The plaintiff also alleges that the District retaliated against him for engaging in protected activity by (1) denying his requests for training opportunities, see Pl.'s Facts ¶ 8; (2) taking corrective action against him while he had a pending FMLA request and "yell[ing] at [him] for purportedly sending too many work related [ ] emails," id. ¶ 9; (3) denying his request "to convert his employment status from term employment . . . to [f]ull-time [e]mployment," id. ¶ 4; and (4) "stripp[ing]" him of credentials and essential job-related duties, see id. ¶ 12. The District has asserted legitimate, non-retaliatory reasons for all of these purportedly adverse actions. See Def.'s Mem. at 11–14; see also Def.'s Reply at 3–4. Thus, as the Court has already noted, see supra Part III the plaintiff now bears the burden of producing evidence sufficient to show that the District's stated reasons for these alleged adverse employment actions were not the actual reasons and are pretext for retaliation, see Brady, 520 F.3d at 494. However, the plaintiff has failed either to address or rebut any of these explanations asserted by the District, and therefore,

---

[9] The plaintiff devotes a good portion of his opposition explaining that his termination for poor performance was pretextual. See Pl.'s Opp'n at 12–13. But, the District does not contend that it declined to extend the plaintiff's employment because of poor performance, but rather because of the allegations contained in the report received by the Chief Counsel. See Def.'s Reply at 5–6. Therefore, the Court finds it unnecessary to address this argument advanced by the plaintiff.

19

has not carried his burden of producing evidence sufficient to demonstrate pretext regarding the District's reasons for engaging in these alleged adverse employment actions. See Mulrain v. Donovan, 900 F. Supp. 2d 62, 68 (D.D.C. 2012) ("To establish pretext, the employee must offer evidence showing that the employer's explanation is 'false, that it is a lie, or that the employer's real motivation was [retaliation].'" (quoting Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 n.3 (D.C. Cir. 1998))). Therefore, the District is awarded summary judgment as to these allegations.

## IV. CONCLUSION

The Court finds that the temporal proximity of the relocation of the plaintiff's workstation, coupled with his proffer of evidence rebutting the District's explanation for the relocation, is sufficient to establish pretext and for a reasonable juror to infer retaliation. Thus, the plaintiff may proceed with his Title VII retaliation claim solely based upon the adverse employment action of relocating his workstation to an allegedly undesirable location. However, the Court concludes that the plaintiff has failed to produce evidence sufficient for a reasonable juror to believe that the District's legitimate, non-retaliatory reasons for each of the other alleged adverse employment actions were not the actual reasons for them, and that the actual reasons were based in retaliatory animus. Accordingly, the Court will grant in part and deny in part the District's motion for summary judgment.

**SO ORDERED** this 3rd day of January, 2018.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.